**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| VB GUIDE, LLC )<br>1228 Ballentine Boulevard )<br>Norfolk, Virginia 23504 )<br> )<br>     Plaintiff, )<br> )<br>     v. )<br> )<br>UNIVERSAL MAGAZINES, INC., )<br>d/b/a MONSTER MARKETING )<br>Serve: Melissa D. Bailey, Registered Agent )<br>     255 Sykes Avenue )<br>     Virginia Beach, Virginia 23454 )<br> )<br>     Defendant. )<br> ) | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff VB Guide, LLC ("VBG"), by and through counsel, alleges for its Complaint against Defendant Universal Magazines, Inc., d/b/a Monster Marketing ("MM") as follows:

### Nature of Action

VBG brings this suit for permanent injunctive relief, damages (including actual, statutory, and punitive damages), costs, and fees and expenses of attorneys and other professionals, and other appropriate relief, arising out of, among other things, MM's copyright infringement, trade-dress infringement, deceptive or misleading advertising, unfair competition, and unjust enrichment under federal and state law.

### The Parties

### VB Guide, LLC

1.      VBG is a Virginia limited liability company with its principal place of business at

I-2806994.6

1228 Ballentine Boulevard, Norfolk, Virginia 23504.

2.      Since 1958 VBG (or each of its predecessors in interest) has been in the business of publishing and distributing *Virginia Beach Guide* ("*Guide*"), a free publication published four times a year for visitors to, and local people in, the Hampton Roads area.

3.      Having now been published for 66 years, the *Guide* is one of the longest-running publications in Virginia, has been read by generations of visitors to, and local people in, the Hampton Roads area, and is widely known and recognized by its distinctive trade dress.

4.      The *Guide* includes articles, announcements, advertisements, discount coupons, and other materials of interest and value to its readers.

5.      Publication of the *Guide* includes both creating VBG's original works of authorship published in the *Guide* as well as selecting, coordinating, and arranging the third-party materials published there.

6.      More specifically, publication of the *Guide* requires all of the following: writing text; preparing graphics; arranging and performing advertisers' on-location photo shoots; selecting photographs; editing text, graphics, and photographs; selling advertising space; working closely with advertisers to prepare and proof their advertisements; having the *Guide* printed and distributed; and other related tasks.

7.      Performing all of the foregoing tasks requires much time, labor, and expense and represents a major investment of financial and human resources by VBG.

8.      For example, preparing, publishing, and distributing the *Guide* requires an investment of well over a thousand labor hours by the VBG staff and an expenditure by VBG of approximately $185,000 per year.

9.      Printed copies of the *Guide* are distributed in various places in Hampton Roads,

including at most of the high-end hotels at or near the Virginia Beach oceanfront.  The *Guide* is also available electronically at VBG's website https://www.vbguidemagazine.com/.

10.     Since 1958, VBG has distributed millions of printed copies of the *Guide*.  The *Guide* has been highly successful, and since the publication's inception, VBG has received several million dollars of gross revenue from publishing and distributing the *Guide*.

11.     Over the 66 years of the *Guide*'s publication, members of the public have come to recognize the *Guide* by its distinctive trade dress, consisting of the publication's overall appearance as formed by distinctive lettering sizes, fonts, and styles, colors and color combinations and schemes, and the appearance and placement of designs and graphics, all of which is nonfunctional and by which the *Guide* is readily distinguishable from similar publications published for and distributed to visitors to, and local people in, the Hampton Roads area.

12.     VBG owns various copyrights in the *Guide*, including the copyrights in original works that VBG has authored for the *Guide* and the copyrights in issues of the *Guide* as collective works.

13.     VBG has registered with the U.S. Copyright Office the following copyrights discussed more fully below:  Registration Number TX 9-416-844, effective as of August 1, 2024, for Volumes 66-1 and 66-2 of the 2024-2025 edition of the *Guide*; Registration Number TX 9-424-006, effective as of September 4, 2024, for Volume 64, Number 1, of the 2022-2023 edition of the *Guide*; and Registration Number TX 9-423-800, effective as of September 3, 2024, for the "Crosswalk Safety" announcement in the 2021-2022 edition of the *Guide*.  Copies of U.S. Copyright Office records for those registrations are attached as Exhibit 1.

14.     VBG routinely includes both a copyright ownership notice and a "do not copy"

3

notice in each issue of the *Guide*.  An example of such a notice in the 2024-2025 issue of the *Guide* is attached as Exhibit 2.

### Universal Magazines, Inc., d/b/a Monster Marketing

15.     MM is a Virginia corporation with a principal place of business at 255 Sykes Avenue, Virginia Beach, Virginia 23454.

16.     MM publishes and distributes books of coupons for consumers to obtain discounts at various retail establishments, mostly restaurants, in Hampton Roads.

17.     According to its web page https://themonstercouponbooks.com/about-monster-coupon-books/, MM has over 434 distribution locations and provides its "Monster Coupon Books" to "thousands of visitors and locals all year round" in "Virginia Beach's Oceanfront, Hilltop, Great Neck, Lynnhaven, Sandbridge, General Booth, Town Center, Bonney Road, Northampton Blvd., Newtown Road, Independence Blvd., Shore Drive, Military Hwy., Norfolk, Chesapeake and Portsmouth areas."

18.     Upon information and belief, MM has had, at all times relevant to this lawsuit, ready access to the editions of the *Guide* listed herein.  In addition, such access is clearly demonstrated by the facts and circumstances set forth herein.

19.     Upon information and belief, the president of MM is, and at all times relevant to this lawsuit has been, Crystal Holloway, and the secretary of MM is, and at all times relevant to this lawsuit has been, Melissa Bailey ("Ms. Bailey").

20.     According to the online records of the Virginia State Corporation Commission, Ms. Bailey is the registered agent for MM.  See Exhibit 3.

### Jurisdiction and Venue

21.     This is a complaint for copyright infringement under the Copyright Act of 1976,

as amended, 17 U.S.C. § 101 *et seq*.; trade-dress infringement under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*.; deceptive or misleading advertising under Virginia statutory law, Va. Code §§ 18.2.-216 and 59.1-68.3; and unfair competition and unjust enrichment under the common law of the Commonwealth of Virginia.

22.     This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and such jurisdiction is exclusive of state courts pursuant to 28 U.S.C. § 1338(a), in that this action arises partly under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq*.

23.     This Court has related-claim jurisdiction over the state-law claims pursuant to 28 U.S.C. §§ 1338(b), 1367(a).

24.     This Court has pendent jurisdiction over the state-law claims in this action in that the federal and state claims constitute a single constitutional case and the same evidence will prove both sets of claims.

25.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and MM maintains its principal place of business in this District.

26.     This Court has personal jurisdiction over MM as a Virginia corporation and pursuant to Va. Code § 8.01-328.1 because MM has caused tortious injury by act or omission in the Commonwealth of Virginia.

### MM's Illegal Conduct

27.     In early June 2024, VBG discovered that MM had published and was publicly distributing a coupon book ("First Book") that contains several advertisements and announcements copied from or, as derivative works, based on, advertisements and announcements that VBG had previously published in the *Guide*.

5

I-2806994.6

28.     Specifically, the First Book contains a page displaying, in exact form or almost exact form, the "Virginia Beach Ambassadors" advertisement and, beneath it, the "Crosswalk Safety" announcement published together in the 2022-2023 edition of the *Guide*.  See Exhibit 4, in which the *Guide* page appears on the left and the First Book page appears on the right.

29.     The First Book also contains a page displaying a "Pet Friendly Virginia Beach" announcement clearly derived from, and substantially similar to, the "Pet Friendly Virginia Beach" announcement published in the 2024-2025 edition of the *Guide*.  See Exhibit 5, in which the *Guide* page appears on the right and the First Book page appears on the left.

30.     Although MM's "Pet Friendly Virginia Beach" announcement is highly similar to VBG's announcement, MM changed the text slightly, probably in an attempt to avoid an allegation of copyright infringement or other violation of VBG's rights.

31.     Moreover, MM clearly imitated the trade dress of VBG's "Pet Friendly Virginia Beach" announcement, using a headline almost identical in font and color to the headline in VBG's announcement and a photograph almost identical to the photograph in VBG's announcement.

32.      The First Book also contains a page displaying a "Virginia Beach Water Safety" announcement clearly derived from, and substantially similar to, the "Virginia Beach Water Safety" announcement published in the 2024-2025 edition of the *Guide*.  See Exhibit 6, in which the *Guide* page appears on the right and the First Book page appears on the left.

33.     Although MM changed the text of its "Virginia Beach Water Safety" announcement slightly, probably in an attempt to avoid an allegation of copyright infringement or other violation of VBG's rights, MM clearly imitated the trade dress of VBG's announcement, using a headline almost identical in font and color to the headline in VBG's announcement and

6

an illustration identical to the illustration in VBG's announcement.

34.     The First Book also contains a page displaying a "ViBe" advertisement clearly derived from, and substantially similar to, the "ViBe" advertisement published in the 2019-2020 edition of the *Guide*.  See Exhibit 7, in which the *Guide* page appears on the left and the First Book page appears on the right.

35.     MM has also published a map of the Virginia Beach oceanfront ("MM Map") that contains the "ViBe" advertisement clearly derived from, and substantially similar to, the "ViBe" advertisement published in the 2019-2020 edition of the *Guide*.  See Exhibit 8, in which the front cover of the MM Map appears on the first page and the "ViBe" advertisement appears on the second page.

36.     Although MM changed the text of its "ViBe" advertisement slightly, probably in an attempt to avoid an allegation of copyright infringement or other violation of VBG's rights, MM clearly imitated the trade dress of VBG's advertisement, using a headline almost identical in font and color to the headline in VBG's advertisement, a text box almost identical in font and color to the text box in VBG's advertisement, and an illustration almost identical to the illustration in VBG's advertisement.

37.     Upon information and belief, ViBe District Virginia Beach, a Virginia nonstock corporation doing business as ViBe Arts and Creative District, which sponsored the "ViBe" advertisement in the 2019-2020 edition of the *Guide*, did not authorize MM to publish the "ViBe" advertisement that appears in the First Book and the MM Map.

38.     Moreover, MM's "ViBe" advertisement is not in compliance with the current branding standards of ViBe Arts and Creative District as set forth in the written standards for advertising and printing that ViBe Arts and Creative District provided to VBG this year.

39.     The First Book also contains a page displaying a "Wave Trolley" route map clearly derived from, and substantially similar to, the trolley route map published as an advertisement in the 2023-2024 edition of the *Guide*.  The related components of that First Book ad such as the "Wave" logo, trolley-car photograph, and trolley-related QR code were, upon information and belief, derived from the identical or substantially similar components in the trolley route map published in the 2022-2023 edition of the *Guide*.  See Exhibit 9, in which the *Guide* page appears on the left and the First Book page appears on the right.

40.     That MM did not do independent research or check with Hampton Roads Transit ("HRT"), the relevant transportation authority, in preparing MM's recent version of the trolley map is demonstrated by the fact that HRT no longer operates part of the route correctly shown on the version of the map that previously appeared in the *Guide*.

41.     Upon information and belief, HRT, which sponsored the trolley map advertisement in the 2023-2024 edition of the *Guide*, did not authorize MM to publish the "Wave Trolley" advertisement when it appeared in the First Book.

42.     MM included on the cover of the First Book the QR code shown in Exhibit 10. Inclusion of that QR code in the First Book means that MM published online all of the foregoing materials, thereby greatly increasing the amount and scope of their distribution.

43.     Because of the identical or substantially similar nature of the foregoing advertisements and announcements, including but not limited to MM's copying or close imitation of VBG's trade dress, a number of members of the public have asked VBG if it originated, sponsored, or approved the First Book.  For example, HRT trolley drivers have told VBG about trolley passengers annoyed by the incorrect map shown in the First Book, which the drivers incorrectly assumed originated with VBG.

44.     Upon information and belief, MM took its illegal actions in an unfair effort to give its discount-coupon books more of the look and feel of the *Guide* so that MM can attempt to sell advertising space in its books and to persuade high-end hotels to allow MM's books to be distributed there alongside copies of the *Guide*.

45.     Upon information and belief, MM took its illegal actions because it was easier, faster, and less expensive for MM to copy and create derivative works from VBG's copyrighted and proprietary materials than for MM to create its own materials.

46.     Upon information and belief, MM's illegal actions were intended to, and have had, the effect of increasing the value to MM of its publishing business and the profits from that business.  Such increase has unfairly come at the expense of VBG and its publishing business.

47.     Because advertisers have seen MM's copies of their paid advertisements in the *Guide* published for free in the First Book and another coupon book that MM published on or about June 30, 2024 ("Second Book"), MM's illegal actions have made it more difficult or even impossible for VBG to sell advertising space in the *Guide* to such advertisers.

48.     Once it became aware of MM's illegal conduct, VBG acted quickly to protect its rights.  On June 7, 2024, VBG sent an e-mail to Ms. Bailey in which VBG noted that MM had copied, apparently by scanning, several advertisements and announcements from various editions of the *Guide* and asking MM to take steps to resolve the situation.

49.     Ms. Bailey replied that day, stating that the First Book was based on "much research performed by our graphic artist for articles" and that MM "has not scanned any pictures or articles from your publication."

50.     Ms. Bailey's claim that MM did not scan anything from the *Guide* is undercut by the fact that the relevant materials in the First Book have a resolution of approximately 300 dots

per square inch (the same resolution produced by scanning) while materials copied from online sources—presumable the source of MM's claimed "research"—have a much lower resolution of approximately 72 dots per square inch.

51.     Materials with the low resolution of 72 dots per square inch are so grainy that they are not suitable for reproduction in publications such as the *Guide* or the First Book.  Thus, despite MM's assertion that it obtained some of the relevant materials from "publicly available sources," MM cannot have obtained the relevant materials in the First Book by copying them from third-party websites.

52.     On June 24, 2024, counsel for VBG sent a letter to Ms. Bailey that included the materials in Exhibits 2, 4-7, and 9-10 hereto, alleged that MM had infringed VBG's copyrights and otherwise violated VBG's rights, and demanded that MM take corrective action.

53.     Within about a week thereafter, MM published the Second Book, which is still being distributed to the public in printed and electronic form.

54.     When it published the Second Book, MM did not follow the usual industry practice of leaving printed copies of the First Book available for distribution until their supply was exhausted.  Rather, probably in a tacit acknowledgment of the validity of VBG's claims of infringement and other violations caused by the First Book, MM withdrew the First Book from distribution and replaced it with the Second Book.

55.     The Second Book contains the materials shown in Exhibit 11.  Those materials are identical or substantially similar to the materials shown in Exhibits 5, 6, and 7.

56.     Ms. Bailey sent an e-mail reply to the June 24 letter on July 1, 2024, stating that MM planned to meet with a lawyer on July 9 (which would have been over two weeks after she received the letter).

I-2806994.6

57.     However, in apparent attempt to keep distributing the Second Book as long as possible during the summer tourist season, when demand for such coupon books is highest, MM did not substantively reply to the June 24 letter for well over a month.

58.     During that time, counsel for VBG e-mailed Ms. Bailey on July 11, 2024, to inquire about the status of a substantive reply.  Ms. Bailey's reply was not substantive but rather simply another delaying tactic.

59.     On July 15, 2024, counsel for VBG again e-mailed Ms. Bailey to make the same inquiry and to point out the fresh infringements and increasing damage caused by the materials included in Exhibit 11.  That e-mail included copies of those materials.

60.     Finally, on July 30, 2024, approximately five weeks after the letter of June 24, MM's counsel replied to VBG's counsel, denying any liability for infringing or otherwise violating any of VBG's rights.

61.     On August 2, 2024, counsel for VBG sent to MM's counsel a letter refuting several allegations set forth in the July 30 letter and demanding once more that MM take corrective action and cease its illegal conduct.

62.     MM's counsel responded on August 9, 2024, again denying any liability for infringing or otherwise violating any of VBG's rights.

63.     The parties' counsel discussed the matter by telephone on August 15, 2024, and on August 19, 2024, MM's counsel sent to VBG's counsel an e-mail stating that MM would not remove the Second Book from distribution or even allow VBG to remove it from distribution at its own expense.

64.     Although MM has repeatedly claimed that it has documents from third parties such as the ViBe Arts and Creative District authorizing MM to publish some of the

I-2806994.6

advertisements and announcements discussed herein, MM has never provided any such documents to VBG despite VBG's request that it do so.

65.     VBG has never given MM permission to copy, create derivative works from, distribute, or publicly display any of the materials described herein that have appeared in the *Guide*.

## Count I—Copyright Infringement

66.     VBG hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 65 as if fully set forth herein.

67.     This cause of action arises under the Copyright Act of 1976, , as amended, 17 U.S.C. § 101 *et seq.*

68.     VBG owns and has registered the copyrights identified in Exhibit 1 ("Copyrights"), and such Copyrights are valid, subsisting, and enforceable.

69.     As the owner of copyrights in one or more original works of authorship, VBG has the right to exclude MM from copying such works, creating derivative works from them, distributing them, and publicly displaying them.

70.     As the owner of copyrights in collective works, VBG has the right to exclude MM from copying the original selection, coordination, or arrangement of contributions to such works. (That the copyrights in some of the contributions themselves may be owned by third parties in no way negates VBG's rights as the owner of the copyrights in the collective works.)

71.     By its activities described herein, MM substantially copied VBG's selection, coordination, and arrangement of multiple components of collective works to which VBG owns the copyrights.

72.     The foregoing activities of MM infringe the exclusive rights of VBG, pursuant to 17 U.S.C. § 106, as the owner of the Copyrights.

73.     Such infringement of the Copyrights makes MM liable to VBG under 17 U.S.C. § 501.

74.     MM's infringement of the Copyrights was knowing, deliberate, and willful.

75.     MM's acts of copyright infringement have caused VBG to sustain monetary damages, loss, and injury in an amount that is unknown to and cannot be calculated by VBG at present and therefore must be determined at the trial of this action.

76.     By reason of MM's copyright infringement alleged herein, VBG has suffered, is suffering and will continue to suffer irreparable damage and, unless MM is restrained from continuing these wrongful acts, the damage to VBG will increase.

77.     VBG has no adequate remedy at law.

## Count II—Trade-Dress Infringement

78.     VBG hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 77 as if fully set forth herein.

79.     This cause of action arises under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*.

80.     VBG's trade dress in the *Guide* is protectable because it is nonfunctional and has acquired secondary meaning such that the imitation of that trade dress creates a likelihood of consumer confusion.

81.     MM's use of trade dress that is the same as or similar to VBG's trade dress is likely to confuse consumers, advertisers, and potential advertisers.

82.     More specifically, the aforesaid acts of MM are likely to cause confusion, mistake, or deception among consumers, advertisers, and potential advertisers as to the source or origin of MM's discount-coupon books by reason of the fact that people are likely to believe that such books originate from, or are in some way properly connected with, approved by, sponsored by,

or endorsed by VBG.

83.     In fact, as discussed above, the aforesaid acts of MM have already caused consumer confusion, and actual confusion is the strongest proof of a likelihood of confusion.

84.     The aforesaid acts of MM violate 15 U.S.C. § 1125(a).

85.     MM's infringement of VBG's trade dress was undertaken willfully and with the intention of causing confusion, mistake, or deception.

86.     MM's acts of trade-dress infringement have further caused VBG to sustain monetary damages, loss, and injury in an amount that is unknown to and cannot be calculated by VBG at present and therefore must be determined at the trial of this action.

87.     By reason of MM's trade-dress infringement alleged herein, VBG has suffered, is suffering and will continue to suffer irreparable damage and, unless MM is restrained from continuing these wrongful acts, the damage to VBG will increase.

88.     VBG has no adequate remedy at law.

## Count III—Deceptive Or Misleading Advertising

89.     VBG hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 88 as if fully set forth herein.

90.     The foregoing actions of MM constitute publication and dissemination of deceptive or misleading advertising, inducements, writings, or documents in violation of the Virginia criminal statute against false advertising, Va. Code § 18.2-216, for which a private right of action exists under Va. Code § 59.1-68.3.

91.     MM published and disseminated multiple advertisements and announcements that MM copied or derived from identical or substantially similar advertisements and announcements previously created, or selected, coordinated, and arranged, and published by VBG in the *Guide*.

92.     By such conduct, MM, with the intent to dispose of the First Book, the Second

Book, and the MM Map, and to increase the consumption thereof, made, published, disseminated, circulated, and placed before the public, in the form of books and maps, advertisements and announcements regarding goods and services offered to the public, which advertisements and announcements contained representations or statements of fact that are untrue, deceptive, or misleading.

93.     Those representations or statements of fact are untrue, deceptive, or misleading in that they falsely imply that the First Book, Second Book, and MM map originate from, or are in some way properly connected with, approved by, sponsored by, or endorsed by VBG.

94.     Such conduct by MM violates Va. Code § 18.2-216.

95.     MM has caused VBG to suffer a loss in that MM's actions have made it more difficult or even impossible for VBG to sell advertising space in the *Guide* to certain advertisers. Moreover, MM's actions have confused members of the public into believing, falsely, that there is some sort of relationship between (a) MM and its discount-coupon books and (b) VBG and the well-known and long-published *Guide*.  Consequently, MM's actions have decreased the value of VBG's business and the *Guide* and adversely affected the business reputation of both VBG and the *Guide*.

96.     Such loss gives VBG a private right of action under Va. Code § 59.1-68.3.

97.      MM's unauthorized use of VBG's materials was undertaken willfully and with the intention of causing confusion, mistake or deception.

98.     MM's conduct has further caused VBG to sustain monetary damages, loss, and injury in an amount that is unknown to and cannot be calculated by VBG at present and therefore must be determined at the trial of this action.

99.     By reason of MM's conduct, VBG has suffered, is suffering and will continue to

suffer damage and, if MM continues these wrongful acts, the damage to VBG will increase.

<strong><u>Count IV—Unfair Competition</u></strong>

100.     VBG hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 99 as if fully set forth herein.

101.     This cause of action arises under the common law of the Commonwealth of Virginia

102.     MM's actions discussed herein constitute unfair competition within the meaning of the common law of the Commonwealth of Virginia.

103.     Pursuant to the common law of the Commonwealth of Virginia, VBG is entitled to permanent injunctive relief ordering MM to cease this unfair competition and to disgorge all of MM's profits associated with this unfair competition.

104.     VBG has no adequate remedy at law.

<strong><u>Count V—Unjust Enrichment</u></strong>

105.     VBG hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 104 as if fully set forth herein.

106.     This cause of action arises under the common law of the Commonwealth of Virginia.

107.     As described above, MM received a financial benefit from VBG in that by copying and creating derivative works from advertisements and announcements created, or selected, coordinated, and arranged, by VBG, MM was able to publish identical or substantially similar advertisements and announcements at a considerable savings to MM.

108.     As an experienced publisher, MM obviously knew of the significant financial benefit to itself that MM derived by exploiting VBG's content without VBG's permission.

109.     MM accepted and retained the financial benefit under circumstances that make it

unjust for MM to have acted as it did without appropriate compensation to VBG.

110.    MM's unjust enrichment of itself has caused VBG to sustain monetary damages, loss, and injury in an amount that is unknown to and cannot be calculated by VBG at present and therefore must be determined at the trial of this action.

### Request for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, VBG hereby makes demand for a trial by jury as to all issues herein so triable.

### Prayer for Relief

WHEREFORE, VBG prays for the following relief:

(a)    That MM be held liable under each claim for relief set forth in this Complaint;

(b)    A permanent injunction prohibiting MM, its directors, officers, employees, agents, successors, assigns, affiliates, and all entities in active concert or participation with any of the foregoing entities (all of the foregoing, collectively, "MM Entities") from further:

    (i)    Infringing the Copyrights;

    (ii)    Infringing VBG's trade dress; and

    (iii)    Engaging in deceptive or misleading advertising, unfair competition, and unjust enrichment with respect to VBG and the *Guide*;

(c)    That MM be required to file with the Court and serve on VBG within thirty (30) days after entry of the Injunction, a report in writing under oath setting forth in detail the manner and form in which MM has complied with the Injunction;

(d)    An award to VBG of its actual damages and the additional profits of MM under 17 U.S.C. § 504 in an amount of not less than $150,000;

(e)    An award to VBG of its applicable statutory damages under 17 U.S.C. § 504 in an

amount of not less than $150,000;

(f)    That, under 17 U.S.C. § 503, the Court order the destruction or other reasonable disposition of all copies found to have been made or used in violation of VBG's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies may be reproduced;

(g)    That the Court award to VBG its costs and reasonable attorneys' fees under 17 U.S.C. § 505;

(h)    An award to VBG for all damages suffered by it resulting from the acts alleged herein, pursuant to 15 U.S.C. § 1117;

(i)    An award to VBG of increased damages up to three times the amount found as VBG's actual damages, pursuant to 15 U.S.C. § 1117;

(j)    That, pursuant to 15 U.S.C. § 1117, MM be compelled to account to VBG for any and all profits derived by MM from its illegal acts complained of herein;

(k)    That MM be ordered, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all printed or electronic materials that are in the possession, custody, or control of MM and infringe VBG's trade dress as well as all plates, matrices, and other means of making the same;

(l)    That the Court declare this dispute to be an exceptional case and award to VBG its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

(m)    That, pursuant to Va. Code § 59.1-68.3 and the equity powers of this Court, the Court grant to VBG actual damages as well as attorney's fees;

(n)    An award to VBG of punitive damages under the law of the Commonwealth of Virginia in an amount of not less than $350,000;

I-2806994.6

(o)      Pre-judgment and post-judgment interest on all amounts awarded to VBG;

(p)      That the Court grant to VBG any other remedy to which it may be entitled as

provided for in federal and/or state law; and

(q)      That the Court grant to VBG such other and further relief as this Court deems just

and equitable.

Dated:   September 9, 2024                          Respectfully submitted,

VB GUIDE, LLC


By:____/s/ Brett A. Spain_____
Brett A. Spain, VSB 44567
Timothy J. Lockhart, VSB 31028
Counsel for VB GUIDE, LLC
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia  23510
Telephone:  757-628-5500
Facsimile:  757-628-5566
bspain@wilsav.com
tlockhart@wilsav.com

19

I-2806994.6